UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerome C. Newkirk,               ) | |
|                         ) | Civil Action No. 4:13-cv-01634-RMG-KDW |
|           Plaintiff,     ) | |
|                         ) | |
|      vs.                  ) | REPORT AND RECOMMENDATION |
|                         ) | |
| James B. Enzor, individually and as an   ) | |
| officer of the South Carolina Highway   ) | |
| Patrol and the South Carolina         ) | |
| Department of Public Safety,       ) | |
|                         ) | |
|           Defendants.    ) | |
| _____) | |

Plaintiff filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights by unlawfully arresting him. This matter is before the court on Defendant Enzor's Motion for Summary Judgment, ECF No. 64, filed on November 25, 2014, and Defendant South Carolina Department of Public Safety's ("SCDPS") Motion for Summary Judgment, ECF No. 65, filed on December 1, 2014. On December 18, 2014, Plaintiff filed an omnibus memorandum in Response in Opposition to Defendants' Motions, ECF No. 74. Defendant SCDPS filed a Reply on January 5, 2015, ECF No. 75. Therefore, this matter is now ripe for review. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(f), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

I.    Background

This lawsuit arises from a traffic stop on Interstate 95 ("I-95") and an arrest following the stop. ECF No. 1. On October 14, 2012, Defendant Enzor pulled over Plaintiff's wife ("Mrs. Newkirk") for speeding in Florence County. Plaintiff and Mrs. Newkirk were traveling through

South Carolina when the traffic stop occurred, and Plaintiff was in the passenger's seat.[1] According to Defendant Enzor, Mrs. Newkirk was traveling at 77 miles per hour in a construction work zone where the posted speed limit was 55 miles per hour. When Defendant Enzor started to hand Mrs. Newkirk the traffic citation, Mrs. Newkirk began to dispute that she was speeding. Mrs. Newkirk told Defendant Enzor that she believed he pulled her over based on racial discrimination and not because she was speeding.

At this point, Defendant Enzor asked Mrs. Newkirk to step out of her vehicle, and Mrs. Newkirk complied. However, Mrs. Newkirk turned to walk back to her vehicle after Defendant Enzor began talking and did not comply with any of his directives from that point on. Plaintiff got out of the vehicle to assess the situation, and ultimately, Defendant Enzor arrested both Plaintiff and Mrs. Newkirk. The majority of the encounter between Plaintiff and Defendant Enzor was recorded by the dash-mounted video camera in Defendant Enzor's patrol car.

Plaintiff brings suit against Defendant Enzor under § 1983 for false arrest under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. ECF No. 1-1 at 9. Additionally, Plaintiff brings suit against SCDPS for negligence/gross negligence/recklessness, intentional infliction of emotional distress/outrage, malicious prosecution, false imprisonment, and negligent supervision/training. *Id.* at 9-14.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

---

[1] Mrs. Newkirk has filed a similar action pending before the court.

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."
*Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

III.    Analysis

A. Defendant Enzor's Motion for Summary Judgment

Defendant Enzor moves for summary judgment on Plaintiff's caase of action against him for false arrest. ECF No. 64-1. Defendant Enzor also argues that any of Plaintiff's claims against him for acting in his official capacity must be dismissed. *Id.* The undersigned will address each argument in turn.

1. Probable Cause for Hindering Arrest

Defendant Enzor maintains that he had probable cause to arrest Plaintiff and that he is entitled to qualified immunity on Plaintiff's claim for unlawful arrest. ECF No. 64-1 at 5-16. In his Response, Plaintiff argues that Defendant Enzor is not entitled to qualified immunity or

judgment as a matter of law because a jury could conclude that Defendant Enzor acted in an objectively unreasonable manner and it is clearly established that an arrest lacking probable cause offends the constitution. ECF No. 74 at 11-20.  Therefore, the undersigned must determine (1) whether there was probable cause to arrest Plaintiff and (2) whether Defendant Enzor is entitled to qualified immunity because a reasonable police officer, under similar circumstances, would not have known that arresting Plaintiff violated his clearly established rights. *See e.g. Swagler v. Sheridan*, 837 F. Supp. 2d 509, 521 (D. Md. 2011).

Defendant Enzor contends that he "clearly had probable cause to arrest Plaintiff for hindering an officer" based on Plaintiff's actions during his attempt to arrest Mrs. Newkirk. ECF No. 64-1 at 11. Furthermore, Defendant Enzor contends that "Plaintiff was arrested based upon an arrest warrant signed by a magistrate judge." *Id.* at 12. Defendant Enzor appears to argue that the arrest warrant he secured for Plaintiff "the following day," ECF No. 64-1 at 11, after Plaintiff was "booked at the Florence County Detention Center," *Id.* at 10, should provide him with "some protection from suit under 42 U.S.C. § 1983." *Id.* at 12-13. Cases in the Fourth Circuit have held that the existence of a valid warrant is support for an officer's "claim that he acted with objective reasonableness." *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (1991). As explained by the Supreme Court, "[t]he purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest [and is a] checkpoint between the Government and the citizen. . . ." *Steagald v. United States*, 451 U.S. 204, 212 (1981).  An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense. *Id.* at 213. An arrest warrant secured after an arrest is not prima facie evidence that probable cause existed during an arrest. *See e.g., Torchinsky*, 942 F.2d at 262 ("Of course, obtaining an arrest warrant does not provide per se

4

evidence of objective reasonableness."); *Malley v. Briggs*, 475 U.S. 335, 345(1986). Further, even if it were, at a minimum, Plaintiff could have been subjected to unreasonable seizure within the meaning of the Fourth Amendment from the time he told he was under arrest until the time a magistrate signed an arrest warrant the following day. Therefore, Defendant Enzor does not escape liability based on the subsequent procurement of an arrest warrant.

From the time Plaintiff was arrested until the time Defendant Enzor filed his motion, three separate South Carolina "hindering arrest" statutes have been cited by Defendant Enzor. In his "booking card," Plaintiff was charged under South Carolina Code section 16-5-50 for "arrest/interference, hindering officers serving warrant or rescuing prisoners." ECF No. 65-7. However, in his arrest warrant, Defendant Enzor indicates that Plaintiff "did verbally and repeatedly instruct and coerce the driver of the vehicle to disregard any instructions the Trooper was giving her." ECF No. 64-7. The "offense" listed in the warrant is "hindering/hindering an officer," and section 17-25-30 of the South Carolina Code is cited therein. *Id.* Now, in his Motion for Summary Judgment, Defendant Enzor cites to a third South Carolina Code section and maintains that he "could have referenced S.C. Code § 16-9-320, which *does* govern hindering an officer outside the context of offenses against civil rights." ECF No. 64-1 at 13 (emphasis in original). Defendant Enzor maintains that any errors in citing to the correct statute until now are irrelevant. *See id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The undersigned agrees with Defendant Enzor to the extent he maintains that statute citation errors do not impact whether he had probable cause to arrest Plaintiff because probable cause may also be based on uncharged conduct. *See, e.g., Devenpeck v. Alford,* 543 U.S. 146, 154–56 (2004); *Jackson v. City of Abbeville,* 623 S.E.2d 656, 660 (S.C. Ct. App. 2005); *see also Jones v. Camden Police Dep't*, No. 3:09-2161, 2010 WL 3489021, at *6 (D.S.C. Aug. 13, 2010) *report*

*and recommendation adopted*, No. 3:09-2161-DCN, 2010 WL 3452338 (D.S.C. Sept. 1, 2010) *aff'd*, 417 F. App'x 351 (4th Cir. 2011) (finding that based on his actions plaintiff could have been arrested for several uncharged offenses, including "the common law offense of 'obstruction of justice'").

After review, the undersigned does not find that any statute cited by Defendant Enzor could apply to Plaintiff's behavior in this case. First, in Plaintiff's arrest warrant, Defendant Enzor cited to section 17-25-30. Defendant Enzor concedes that section 17-25-30 is not a hindering statute but argues it is a penalty statute for the common law offense of hindering an officer. ECF No. 64-1 at 11. The undersigned will address the common law after examining the statutes at issue. In any event, it appears that both parties agree that section 17-35-30 cannot provide a basis for Plaintiff's arrest.[2]

Turning to the next code section, which was listed in Plaintiff's booking card, Defendant Enzor indicated that Plaintiff had violated section 16-5-50 of the South Carolina Code. In full, section 16-5-50 provides:

> Any person who shall (a) hinder, prevent, or obstruct any officer or other person charged with the execution of any warrant or other process issued under the provisions of this chapter in arresting any person for whose apprehension such warrant or other process may have been issued, (b) rescue or attempt to rescue such person from the custody of the officer or person or persons lawfully assisting him, as aforesaid, (c) aid, abet, or assist any person so arrested, as aforesaid, directly or indirectly, to escape from the custody of the officer or person or persons assisting him, as aforesaid, or (d) harbor or conceal any person for whose arrest a warrant or other process shall have been issued, so as to prevent his discovery and arrest, after notice or knowledge of the fact of the issuing of such warrant or other process, shall, on conviction for any such offense, be subject to a

---

[2] In full, section 17-25-30 of the South Carolina Code provides: "In cases of legal conviction when no punishment is provided by statute the court shall award such sentence as is conformable to the common usage and practice in this State, according to the nature of the offense, and not repugnant to the Constitution."

> fine of not more than three thousand dollars or imprisonment for not more than
> three years, or both, at the discretion of the court having jurisdiction.

However, in the case of *State v. Alls*, 500 S.E.2d 781 (S.C. 1998), the South Carolina Supreme Court held that this statute only applies "to persons hindering the arrest of an individual charged with an offense against civil rights." *Id.* at 781. There, the court found that section 16-5-50 was originally enacted in 1871, and when the chapter, entitled "Offenses against Civil Rights," is read as a whole, "section 16-5-50 must be construed as part of a broader civil rights statutory scheme. . . ." *Id.* at 782. Therefore, the undersigned interprets section 16-5-50(a) as applying to persons hindering the arrest or service of process of an individual being arrested for a civil rights violation.  This would possibly be applicable in the context of a mob situation, as the *Alls* court indicates. *See id.* (citing section 16-5-30). Clearly, Plaintiff's wife was not being arrested for a civil rights violation. Therefore, Plaintiff's alleged hindering of his wife's arrest does not violate section 16-5-50. However, the *Alls* court indicated that the defendant there "should probably have been indicted under a different statute, such as S.C. Code Ann. § 16-9-320 (Supp. 1997)." *Alls*, 500 S.E.2d at 783.

> In full, section 16-9-320(A) provides:

> It is unlawful for a person knowingly and wilfully to oppose or resist a law enforcement officer in serving, executing, or attempting to serve or execute a legal writ or process or to resist an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not. A person who violates the provisions of this subsection is guilty of a misdemeanor and, upon conviction, must be fined not less than five hundred dollars nor more than one thousand dollars or imprisoned not more than one year, or both.

> The undersigned finds that there is only one reasonable interpretation of section 16-9-320(A) based on the two infinitive phrases in the first sentence, and the interpretation makes two actions unlawful. First, the undersigned finds that it is unlawful under section 16-9-320(A) for a person knowingly and wilfully "to oppose or resist a law enforcement officer in serving,

executing, or attempting to serve or execute a legal writ or process. . . ." *See State v. Kirven*, 309 S.E.2d 749, 750 (S.C. 1983) (holding defendant could not be convicted under statute prohibiting hindering when he stepped between his son and the arresting officer and tried to talk with his son because the State conceded that no warrant had been issued). The undersigned finds it is also unlawful under section 16-9-320 for a person knowingly and wilfully "to resist an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not." Here, no evidence demonstrates that Plaintiff acted under either scenario.  Though Mrs. Newkirk resisted arrest, Plaintiff did not (nor could he "resist" on her behalf). Therefore, Plaintiff's alleged interference with Mrs. Newkirk's arrest does not violate section 16-9-320.  Accordingly, Defendant Enzor has cited no "hindering" statute that would apply to this situation. Therefore, the undersigned must determine whether there was probable cause to arrest Plaintiff under the common law.

The South Carolina Supreme Court appears to recognize the common law offense of hindering an officer's arrest; however, there is little case law on the subject, and its elements are unclear. In *State v. Kirven*, the court found that the requirement of a search warrant in section 16-9-320 "distinguishe[d] the statutory crime from *common law interference with a police officer in the performance of his duty*, with which Appellant might have been charged." 309 S.E.2d at 750 (emphasis added). There is much more caselaw, however, on common law obstruction of justice. Under common law obstruction of justice, "it is an offense to do *any* act which prevents, obstructs, impedes, or hinders the administration of justice." *State v. Lyles-Gray*, 492 S.E.2d 802, 805 (S.C. Ct. App. 1997) (emphasis in original) (citing *State v. Cogdell,* 273 S.C. 563, 567, 257 S.E.2d 748, 750 (1979)). The Fourth Circuit Court of Appeals recognized South Carolina's "common law crime of obstruction of justice" in *Hess v. Medlock*, 820 F.2d 1368, 1373 (4th Cir.

1987). There, the court defined obstruction of justice as a crime "committed whenever a defendant intentionally performs any act which prevents, obstructs, impedes, or hinders the administration of justice." *Id.* (internal citation omitted); *see also Cousar v. Richland Cnty. Sheriff's Dep't*, No. 3:08-392-CMC, 2009 WL 982414, at *8 (D.S.C. Apr. 10, 2009) (finding probable cause existed to arrest defendant for common law obstruction of justice where defendant refused to follow officers' directive to allow a child to go to hospital by ambulance). In some cases, South Carolina courts appear to treat common law hindering and common law obstruction of justice as the same offense. *See e.g., City of Columbia v. Bouie*, 124 S.E.2d 332, 333 (S.C. 1962) *rev'd on other grounds*, 378 U.S. 347 (1964) ("Resisting arrest is one form of the common law offense of obstructing justice."). Having determined that South Carolina recognizes a common law offense of hindering or obstruction of justice, the undersigned turns to the probable cause analysis.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters,* 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than

evidence necessary to convict." *Porterfield v. Lott,* 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky,* 942 F.2d at 264. Probable cause will be found when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton,* 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992)). "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* A court's inquiry should be made based on the information possessed by the officer at the time of the arrest that was then reasonably available to him at the time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett,* 973 F.2d at 312. When a plaintiff alleges a lack of probable cause for an arrest, he "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was involved in the charged offense. *Brown v. Gilmore,* 278 F.3d 362, 368 (4th Cir. 2002).

To determine whether Defendant Enzor had probable cause to arrest Plaintiff under the common law, the undersigned has reviewed the videos and other evidence submitted to the court. The dash-cam video from Defendant Enzor's vehicle indicates that Plaintiff's vehicle was pulled over on October 14, 2012, on I-95 North. ECF No. 64-2. Other than the date, time, position, and

other electronic information on the screen, the video depicts Defendant Enzor approaching

Plaintiff's vehicle from the passenger's side. Defendant Enzor then tells Mrs. Newkirk that he

clocked her speeding "about two miles back" where the speed limit drops to 55. Specifically,

Defendant Enzor indicates that he clocked Mrs. Newkirk driving 77 miles per hour. Defendant

Enzor requests Mrs. Newkirk's vehicle registration and proof of insurance,[3] and returns to his

patrol car. Defendant Enzor then returns to Plaintiff's vehicle, again approaching from the

passenger's side. Defendant Enzor tells Mrs. Newkirk that he is going to cut her speed "back to a

64 in a 55," however Mrs. Newkirk's words to Defendant Enzor during this exchange are

inaudible. After the exchange and a discussion of Mrs. Newkirk's speed, Defendant Enzor

instructs her to "step out of the vehicle."

Mrs. Newkirk then exits the vehicle and walks to the back of it where Defendant Enzor is

now standing. Defendant Enzor then states:  "Let me tell you something right now," and he

points to the right, away from the Interstate. At that point, Defendant Enzor notifies Mrs.

Newkirk that she is "under arrest," and he takes her wrists and tries to pull her toward him, and

away from the Interstate. In response, Mrs. Newkirk states "for what,"[4] and again, Defendant

Enzor points toward the middle section of the vehicle's rear, away from the Interstate, and he

pulls her toward that spot. While Defendant Enzor is attempting to secure Mrs. Newkirk or put

her in handcuffs, Plaintiff opens the passenger's side door and walks to the back of the vehicle,

leaving the passenger's side door ajar. Plaintiff stands at the back of the vehicle while Defendant

Enzor continues to try and restrain Mrs. Newkirk. Defendant Enzor instructs Mrs. Newkirk to

---

[3] Whether Defendant Enzor also verbally requests Plaintiff's driver's license is unclear.
[4] Though her words are not entirely audible in the video, Mrs. Newkirk indicates in her Response
Brief that she exclaimed "for what?!" in response to Defendant Enzor. ECF No. 74 at 6.

"quit resisting arrest." Plaintiff appears to speak while standing at the back of the vehicle, but his exact words are inaudible.

In his deposition, Plaintiff testified that at this point he "asked [Defendant Enzor] why basically this is going on." ECF No. 64-5 at 2. Plaintiff denied attempting to engage in conversation with Defendant Enzor but testified that he told Defendant Enzor to "calm down." *Id.* Plaintiff testified that Defendant Enzor then told him to "get back in the vehicle." *Id.* Plaintiff testified and video footage depicts Plaintiff then walking back to the passenger's side where he reaches into the car for something. *Id.* Plaintiff admits that he did not immediately return to the car. *Id.* It appears that Plaintiff finds and pulls out a cellphone from the car. Plaintiff remains standing beside the passenger's side door while Defendant Enzor is trying to arrest Mrs. Newkirk, who at no point complies with Defendant Enzor's instructions. Plaintiff again speaks, but his words are inaudible. Defendant Enzor then tells Plaintiff to "get in the car, sir." After making another statement, Plaintiff sits down in the passenger's seat, leaving the door open. Defendant Enzor then begins to read Mrs. Newkirk her Miranda rights and pulls out his radio to call for back-up. Eventually, Defendant Enzor puts Mrs. Newkirk in handcuffs. During Mrs. Newkirk's arrest, Plaintiff remained seated in the passenger's seat and appears to be trying to use a cellphone.

Defendant Enzor then points toward his patrol car and instructs Mrs. Newkirk to "step back here." At this point, Defendant Enzor and Mrs. Newkirk are out of the camera's view, but Plaintiff is seen sitting in the passenger's seat with one leg out of the car, and he points and shouts something in the direction of Defendant Enzor and his wife. Defendant Enzor then instructs Mrs. Newkirk to "Get in the car! Get in the car!" Plaintiff, while leaning out of the car then shouts something in Mrs. Newkirk and Defendant Enzor's direction that sounds like, "shut

up, man." However, Plaintiff's exact words are unclear. Defendant Enzor tells Plaintiff that he "is under arrest too." Plaintiff shuts the passenger's side door, though not immediately upon instruction.

While Plaintiff is seated in his vehicle, Defendant Enzor continues to struggle to get Mrs. Newkirk inside his patrol car. The video depicts Plaintiff leaning his head out of the passenger's side window and yelling something.  Though not entirely audible, it sounds like Plaintiff shouts out the window, "don't worry baby, we'll get them." Sirens are then heard approaching Defendant Enzor's patrol car. An officer is heard instructing Mrs. Newkirk to "come over here and sit down for [him]." The other officer at the scene then tells Mrs. Newkirk that she needs to get in the car. Plaintiff is the only individual shown in the footage, and he is leaning out of the window and is shouting something in the direction of his wife at the officers at the scene. While Mrs. Newkirk shouts at the officers, and yells, "this is ridiculous," and "you will pay," Defendant Enzor walks back to Plaintiff's vehicle and opens the passenger's side door. Plaintiff willfully exits the vehicle and places his hands behind his back, allowing Defendant Enzor to handcuff him. While Plaintiff is being arrested, Mrs. Newkirk screams: "You have no reason to do this to me!" Additionally, Mrs. Newkirk shouts that everything was happening because she "called [Defendant Enzor] the racist that you are!" Mrs. Newkirk also shouts: "You think that because you are in South Carolina that you can get away with this. That day is over! It's over! That day is over." While Mrs. Newkirk continued to shout at the officers, Plaintiff complies with Defendant Enzor's directives and walks toward the officers' patrol cars while handcuffed.

Once everyone is out of the camera's view, Mrs. Newkirk continues to argue with and yell at the officers and continues refusing to get into Defendant Enzor's patrol car. Over the audio Defendant Enzor explains to the officers what happened and stated that Plaintiff was

speeding—that she was going 77 in a 45.[5] Further, Defendant Enzor states that "she didn't want to accept the ticket," so he "pulled her out the car and tried to explain it to her." Defendant Enzor continued and told the officers, verbatim: "She kept on. She wasn't going to accept the ticket. I said that's fine. Put your hands behind your back, you're under arrest. . . ." When asked "what did he [Plaintiff] do?" Defendant Enzor responded that he kept getting in and out of the car. The remainder of the video from this viewpoint includes footage of officers waiting for help to arrive and move Plaintiff's car. Eventually, a tow truck arrives, and Plaintiff's car is towed from the scene. Approximately 45 minutes into the footage the viewpoint of the camera then moves to Plaintiff sitting and wearing a seatbelt in the back of a patrol car. The footage then depicts officers driving Plaintiff to the police station.

The undersigned is of the opinion that material issues of fact exist on the probable-cause issue, making summary judgment inappropriate. The undersigned has carefully considered the evidence presented by all parties, including the video evidence of the incident. Having reviewed all evidence, including the video, in accordance with applicable standards, the undersigned finds that a question of fact exists as to whether Defendant Enzor had probable cause to arrest Plaintiff. The undersigned finds that Plaintiff's conduct, in assessing the situation, disagreeing with Defendant Enzor's action, including some shouting, does not conclusively constitute obstruction or hindering of an officer whether under a common law offense of hindering arrest or obstruction of justice. In *State v. Etherage*, 290 S.E.2d 413 (S.C. 1982), the South Carolina Supreme Court held that defendant's actions, including cursing at officer, calling him names, and threatening to beat him during the course of the arrest of defendant's brother constituted obstruction or hindrance of an officer. The *Etherage* court found that "an officer can be hindered

---

[5] It sounds as if Defendant Enzor says 77 in a 45 though earlier he stated that the speed limit was 55 miles per hour.

by language intended to put him in fear, intimidate or impede him in the discharge of his official duties." *Id.* at 414 (citing *State v. Estes*, 117 S.E. 581, 583 (N.C. 1923)). In an earlier case, the South Carolina Supreme Court held that black high-school students who refused to leave a lunch counter at the request of the store manager and police did not violate a city ordinance. *City of Charleston v. Mitchell*, 123 S.E.2d 512 (S.C. 1961) *rev'd on other grounds*, 378 U.S. 551 (1964). There, the ordinance at issue made it unlawful for any person to resist, hinder, or oppose, or interfere with any employee of police department in discharge of official duties. *Id.* at 514. In reversing the convictions, the *Mitchell* court found that:

> [T]he term 'interfere' has been said to import action, not mere inaction, an active rather than a passive condition, and has been defined as meaning to interpose, to prevent some action, sometimes in a bad sense to intermeddle, to check or hamper, and, specifically to do something which hinders or prevents or tends to prevent the performance of legal duty. In its broadest aspects 'interfere' bears the significance of 'disarrange', 'disturb', 'hinder'.

*Id.* at 520-21. Based on this interpretation, the court found that "refusing obedience to the request of the Chief of Police of the City of Charleston was merely inaction on their part and did not constitute interference with said officer in the discharge of his official duty." *Id.* at 521. The *Etherage* and *Mitchell* decisions reference the case of *Estes*, 117 S.E. 581.

In *Estes*, the North Carolina Supreme Court interpreted a hindering statute that made it unlawful to willfully interfere with or obstruct an officer of the state board of health. *Id.* at 581. There, a sanitary inspector went to Estes's store and told him that his toilet did not comply with the law at which point Estes cursed at the officer. *Id.* However, Estes did not "[rise] from his desk and did not strike or offer to strike [the officer]." *Id.* In interpreting the statute the court held that "actual violence or demonstration of force" is not indispensable to such obstruction or interference. *Id.* at 583. Rather, the court determined that "'interfere' is to check or hamper the action of the officer, or to do something which hinders or prevents or tends to prevent the

performance of his legal duty; and to 'obstruct' signifies direct or indirect opposition or resistance to the lawful discharge of his official duty." *Id.* The court found that whether Estes "used language or was guilty of conduct which was calculated and intended to put the officer in fear or to intimidate or impede him as a man of ordinary firmness in the present discharge of his official duties and did thereby hinder or impede him" were "questions of fact for determination by the jury, and not inferences of law for the decision of the court." *Id.*

The above cases do not determine whether there was probable cause to arrest appellants. Rather these cases concern interpreting "hinder," "interfere," and "obstruct," when determining whether *convictions* should be affirmed. Here, the undersigned must determine whether Defendant Enzor had probable cause to arrest. However, in making this determination, the undersigned is guided by the interpretations of terms at issue here. Two cases within our district guide the probable cause analysis here.

In the case of *McCoy v. City of Columbia*, a South Carolina District Court held that probable cause existed to arrest McCoy for violating a City of Columbia Ordinance based on video evidence of the incident. 929 F. Supp. 2d 541, 559 (D.S.C. 2013) ("[P]robable cause existed to arrest McCoy for violation of the Ordinance, the Officer Defendants did not violate McCoy's Fourth Amendment rights."). The Ordinance at issue in the *McCoy* case states that it was unlawful for "any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id.* at 546. There, footage showed that McCoy was "within an arm's reach of officers attempting to secure an arrestee." *Id.* at 558. Furthermore, McCoy "positioned himself in between the officers and their patrol car, where the officers were attempting to move the arrestee." *Id.* Additionally, the video depicted the following:

> The officers pushed McCoy backwards and indicated that he should step away from the arrest scene, but McCoy failed to heed these clear commands.

> Importantly, the video shows that McCoy's actions forced the officers to divide their attention between securing the arrestee and engaging McCoy. Indeed, because McCoy did not step back from the arrest scene as instructed, two of the officers were eventually required to let go of the arrestee and focus solely on McCoy. The third officer was left to secure the arrestee alone.

*Id.* Therefore, the court concluded that "it was reasonable for the Officer Defendants to believe that McCoy had violated the Ordinance." *Id.* at 558-59.

Unlike in the *McCoy* case, here Plaintiff was never positioned between Defendant Enzor and Mrs. Newkirk. Furthermore, after initially stepping out their vehicle and returning to it upon Defendant Enzor's instruction, Plaintiff was never within close proximity to Defendant Enzor and Mrs. Newkirk. Further, Defendant Enzor never had to leave Mrs. Newkirk in order to focus his attention on engaging with Plaintiff. The undersigned finds that the facts here are more similar to that of the unpublished Fourth Circuit opinion of *Essex v. Prince George's County, Maryland*, 17 F. App'x 107 (4th Cir. 2001).

In *Essex*, plaintiffs brought suit against Officer Washington for false arrest and other causes of action. *Id.* at 107. There the Fourth Circuit considered, in viewing all the evidence in the light most favorable to Maslousky, a plaintiff, whether there was substantial evidence to support the jury's finding that Officer Washington did not have probable cause to arrest Maslousky for hindering. *Id.* at 113. Based on the facts below, the *Essex* court concluded that "a rational jury could reasonably infer that [Officer] Washington did not have probable cause to arrest Maslousky for hindering." *Id.* at 115.

There, Maslousky, an automobile mechanic, came to the scene of an accident involving his friend Essex. *Id.* at 113. Officer Washington informed Essex that he could be arrested "because an accident that causes personal injury is very serious." *Id.* Essex and Officer Washington got into a disagreement over the facts giving rise to the traffic accident and who

17

caused it. *Id.* at 114. When Essex walked away, Officer Washington "grabbed [Essex's] arm and pulled him to the driver's side of the police car" where he "pushed Essex down on the car, pulled his feet apart with his foot and said: 'spread you legs, put your hands on the hood of the car.'" *Id.* at 114. Officer Washington told Maslousky, who was witnessing the incident occur, that he could leave. *Id.* Maslousky told Officer Washington that he was there to tow Essex's car, then retreated to the sidewalk, approximately 15 feet away. *Id.* Again, Officer Washington told Maslousky to leave, and Maslousky told Officer Washington that he needed "to start treating [Essex] like an adult and not a child." *Id.* After a short exchange of words, Officer Washington then arrested Maslousky for hindrance of an arrest. *Id.*

After a trial, the jury found Officer Washington liable for battery but found no constitutional violation. *Id.* at 110. After the jury's verdict, the district court granted Officer Washington's judgment as a matter of law on the battery claim, "conditionally granted a new trial to [Officer Washington] on battery claim, and denied arrestee's motion for new trial. *Id.* On review, the Fourth Circuit found that the jury's verdict finding Officer Washington liable for battery but not for a constitutional violation was inconsistent. *Id.* Therefore, the court vacated the trial court's order denying Maslousky's motion for a new trial. . ." *Id.* Ultimately, the court found that Maslousky presented sufficient facts, as stated above, to support a finding that he was arrested without probable cause. *Id.* at 115.

Here, the undersigned finds that more than one conclusion concerning probable cause can be drawn from the evidence presented to the court as the *Essex* court found. *See id.; see also Rogers v. Pendleton*, 249 F.3d 279, 292 (4th Cir. 2001) ("At minimum, it is clear that when a search is plainly illegal, mere verbal objection cannot constitute obstruction of justice. Thus, because Virginia's obstruction of justice statute clearly fails to encompass Rogers' behavior, we

conclude that his arrest was plainly without probable cause to believe that he violated § 18.2–460(A), and thus the arrest violated his clearly established Fourth Amendment rights."). Here, like in *Essex*, Plaintiff was standing yards away from Defendant Enzor while he was trying to arrest Mrs. Newkirk. Defendant Enzor maintains that Plaintiff's actions in failing to immediately obey Defendant Enzor's instructions and shouting from his car give rise to probable cause for his arrest. The undersigned disagrees. Though, in some circumstances, South Carolina courts have found that words alone can constitute hindering, the undersigned finds that whether Plaintiff's words amount to hindering is a question of fact. Plaintiff's exact words are not entirely clear when viewing the video. Therefore, the undersigned cannot determine as a matter of law whether Plaintiff's actions were intended to put Defendant Enzor "in fear or to intimidate or impede him as a man of ordinary firmness in the present discharge of his official duties and did thereby hinder or impede him." Rather, based on the evidence, the undersigned finds that it is a jury question as to whether Plaintiff violated a South Carolina common law offense concerning hindering an arrest. *Pritchett*, 973 F.2d at 313 ("If there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial.").

Accordingly, based on the evidence before the court and given the totality of the facts and circumstances within Defendant Enzor's knowledge at the time of the arrest, the undersigned finds that there is a genuine issue of material fact whether a prudent or reasonable person would have believed that Plaintiff had committed or was committing a criminal offense. The undersigned recommends the portion of Defendant Enzor's Motion in which he seeks for summary judgment because probable cause existed to arrest Plaintiff for hindering an officer be *denied*.

2.  Defendant Enzor's Motion for Summary Judgment on Qualified Immunity

Qualified immunity is not lost when an officer violates the Fourth Amendment unless a reasonable police officer would know that the specific conduct at issue was impermissible. *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987). The appropriate question is whether a reasonable police officer could have believed that arresting the plaintiff was lawful in light of clearly established law and the information the officers possessed. *Cf. Wilson v. Layne*, 526 U.S. 603, 615 (1999). Officers are not afforded protection when they are "plainly incompetent or . . . knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818.     When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case.  *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was

unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

Whether a right allegedly violated was "clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of law for the court[.]" *Pritchett*, 973 F.2d at 313. Having considered the arguments of the parties, the undersigned finds that, at the time of the alleged misconduct, the following constitutional rights were clearly established: (1) to arrest someone without probable cause violates the Fourth Amendment, *see, e.g., United States v. Watson*, 423 U.S. 411, 417 (1976) (noting if an officer effects an arrest in the absence of probable cause, he violates the arrestee's Fourth Amendment right to be free from unreasonable seizure); *Miller v. Prince George's Cnty.*, Md., 475 F.3d 621, 627 (4th Cir. 2007) (quoting *Brooks v. City of Winston–Salem*, 85 F.3d 178, 183 (4th Cir. 1996) ("'[T]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'"); and (2) to arrest a third party for criticizing a police officer, absent the use of fighting words, during an arrest of another violates the First Amendment, *see, e.g., Lewis v. City of New Orleans*, 415 U.S. 130, 132 (1974) (examining the arrest of a third party for cursing at police officers and finding that the First Amendment protects "obscene" or "opprobrious" language directed at police officers so long as fighting words are not used); *City of Houston, Tex. v. Hill*, 482 U.S. 451, 478 (1987) (holding that third party's verbal criticism of an officer's treatment of his friend must do more than "interrupt any policeman in the execution of his duty" to be constitutionally sanctionable). It was also clearly established at the time of Plaintiff's arrest that the police may not arrest "a third party for . . . refusing to leave the scene of an arrest." *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (affirming district court's finding that right clearly established under Virginia law).

As the Fourth Circuit has noted, however, although the purely legal question of whether the constitutional right at issue was clearly established "is always capable of decision at the summary judgment stage," a genuine question of material fact regarding "[w]hether the conduct allegedly violative of the right(s) actually occurred . . . must be reserved for trial." *Pritchett*, 973 F.2d at 313. As discussed in detail above, the undersigned finds that, when viewing material facts in the light most favorable to Plaintiff, and when considering the video evidence provided, a question of fact exists as to whether Defendant Enzor violated Plaintiff's clearly established constitutional rights. The court cannot determine at the summary judgment phase that Defendant Enzor's actions were objectively reasonable for purposes of granting qualified immunity. Accordingly, the undersigned recommends that the Defendant Enzor be *denied* qualified immunity.

3.   Eleventh Amendment Immunity

Defendant Enzor maintains that "[t]o the extent Plaintiff's Complaint is construed to allege a cause of action under § 1983 against Defendant Enzor in his official capacity, this claim must be barred." ECF No. 64-1 at 18-19. The undersigned agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendant Enzor was an agent or employee

22

of the State when acting in his official capacity, he is not a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendant Enzor, in his official capacity, is immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Enzor in his official capacity be dismissed.

     B.  SCDPS's Motion for Summary Judgment

     SCDPS maintains that it is immune from suit pursuant to the South Carolina Tort Claims Act ("SCTCA"). ECF No. 65-1 at 10-20. Specifically, SCDPS argues SCTCA provides it with immunity from suit because Plaintiff testified that Defendant Enzor was acting intentionally, maliciously, and outside the scope of his duty. *Id.* at 10-17. Additionally, Defendant SCDPS contends that Plaintiff's cause of action for intentional infliction of emotional distress is expressly barred under section 15-78-30(f) of SCTCA. *Id.* at 17-18.[6] SCDPS argues that Plaintiff's claims for negligence, gross negligence, and recklessness must be dismissed because Plaintiff has failed to identify a specific duty owed to him by SCDPS, and the claim is otherwise barred by SCTCA. *Id.* at 18-20. Finally, SCDPS argues that Plaintiff's claims for negligent supervision and training must be dismissed because Plaintiff has failed to establish the necessary elements of each claim. The undersigned will address each of SCDPS's arguments in turn.

_____

[6] Plaintiff "agree[s] that the SCTCA does not waive sovereign immunity for this claim and consent[s] to its dismissal." ECF No. 74 at 25. Therefore, the undersigned will not address Plaintiff's cause of action for intentional infliction of emotional distress and submits this claim should be dismissed based on the consent of the parties.

1.   Intentional, Malicious, and Outside-Scope-of-Duty Conduct Claims

Plaintiff pleaded causes of action against SCDPS for malicious prosecution and false imprisonment. ECF No. 1-1 at 9-11. SCDPS maintains that it is entitled to summary judgment on these claims because even assuming Defendant Enzor acted intentionally, SCTCA grants immunity to governmental entities when an employee acts outside the scope of his employee duties. ECF No. 65-1 at 10-17. In Response, Plaintiff maintains that Defendant Enzor acted within the scope of his employment even though his conduct lacked legal justification. Accordingly, the undersigned is tasked with determining whether Plaintiff can argue that Defendant Enzor was acting within the scope of his employment while committing these alleged intentional torts.

SCTCA grants to the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability for any tort, except as waived therein. S.C. Code Ann. § 15-78-20(b). Section 15-78-70(a) provides that "[t]his chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." However, an employee does not have immunity from suit "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b). Additionally, SCTCA expressly states that "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude" is an exception to South Carolina's waiver of immunity. S.C. Code Ann. § 15-78-60(17).

The undersigned finds that South Carolina district courts and state courts have consistently held that government entities are immune from suits for intentional torts. *See e.g.*, *Smith v. City of Greenwood*, No. 092061-HFF-BHH, 2010 WL 2430952, at *2 (D.S.C. May 13, 2010) *report and recommendation adopted*, No. 8:092061-HFF-BHH, 2010 WL 2382479 (D.S.C. June 14, 2010) ("[C]ourts have been generally consistent in concluding that intentional acts of a governmental employee, intended to do others harm, are deemed outside the scope of their employment and, therefore, constitute an exception to South Carolina's waiver of immunity under the Tort Claims Act.") (citing S.C. Code § 15–78–60 (17)). The *Smith* court recognized that the following courts have all agreed that an employee's intentional acts constitute an exception to South Carolina's waiver of immunity under SCTCA:

> The South Carolina Court of Appeals, *Moore by Moore v. Berkeley County School Dist.,* 326 S.C. 584, 486 S.E.2d 9, 11 (S.C. App. 1997); the Fourth Circuit, *Anthony v. Ward,* 336 Fed. Appx. 311, 316–17 (4th Cir. 2009) ("The jury's finding that Defendants had civilly conspired against Plaintiff was sufficient to remove from the purview of [] SCTCA's protected class of government employees."); and courts of this district, *Moody v. Darnell,* 2010 WL 297810, at *3 (D.S.C. January 21, 2010); *Carthens v. Lewis,* 2009 WL 394299, at *6 (D.S.C. February 17, 2009); *Harkness v. City of Anderson, S.C.,* 2005 WL 2777574, at *4 (D.S.C. October 25, 2005); *McCall v. Williams,* 52 F.Supp.2d 611, 615 (D.S.C. 1999), have all agreed.

*Id.* By definition, false imprisonment is an intentional tort. *See Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 651 (S.C. 2006). "To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was *intentional*, and (3) the restraint was unlawful." *Id.* (emphasis added). Courts in this district have held that the same elements must be present for a state law cause of action for false arrest. *Bryant v. City of Cayce, S.C.*, No. 3:06-333-MJP, 2010 WL 10827078, at *2 (D.S.C. May 17, 2010) *aff'd sub nom. Bryant v. City of Cayce*, 421 F. App'x 313 (4th Cir. 2011). "To prevail on a state law cause of action for false arrest, Plaintiff must establish: "(1) the defendant restrained the plaintiff, (2) the restraint

was intentional, and (3) the restraint was unlawful." *Id.* (citing *Law*, 629 S.E.2d at 651). Therefore, by definition, false arrest is also an intentional tort under South Carolina tort law. Accordingly, Plaintiff's causes of action for false imprisonment and false arrest against SCDPS fail because the elements necessary to prove those causes of action require intentional acts from which it has immunity.

Plaintiff's malicious prosecution cause of action against SCDPS also fails. "[T]o maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Law*, 629 S.E.2d at 648 (internal citation omitted). Here, Plaintiff's cause of action fails because SCDPS is immune from suit for employees who act with actual malice.

Nevertheless, Plaintiff argues that his case is analogous to the case of *Kennedy v. Orangeburg Cnty. Sheriff's Office*, No. 5:08-0873-MBS, 2008 WL 4833022, at *1 (D.S.C. Oct. 31, 2008). In the *Kennedy* case, the court, in considering its subject matter jurisdiction, had to determine "whether Plaintiff's claims, despite being labeled as state law claims, actually present a federal question so as to fall within the artful pleading exception to the well-pleaded complaint rule." *Id.* After referencing SCTCA, the court found that Kennedy's complaint only alleged that an officer's negligent acts occurred while he was acting in the scope of his employment with defendant and did not allege that the officer's "actions were the product of actual malice or any of the other exceptions listed under S.C. Code Ann. § 15-78-60(15)." *Id.* at *2. Therefore, the court determined that Kennedy's claims did not arise under federal law. *Id.* The *Kennedy* order regarding jurisdiction in no way stands for the proposition that Plaintiff can simultaneously plead

that a government employee was acting within the scope of his employment and while doing so committed an intentional tort. The *Kennedy* order is limited to determining federal question jurisdiction. *See id.*

Plaintiff also argues that what he must "prove to prevail, namely, [is] that an objectively reasonable police office[r] would not have arrested [him] based on the totality of the circumstances [Defendant] Enzor confronted." ECF No. 74 at 27. He also maintains that Defendant Enzor's state of mind is inapplicable because the purpose of both the constitutional and tort inquiries are to consider the objective facts and that the court should merely ask whether Defendant Enzor was acting within the scope of his employment by making the traffic stop and arrest. *Id.* Here, Plaintiff blurs the lines between his § 1983 causes of action and his state law claims and does not address whether SCDPS has immunity under SCTCA. At issue is whether SCDPS can be liable for an intentional tort of its employee. Based on the express provisions in SCTCA and the above caselaw, it cannot. Accordingly, the undersigned recommends granting SCDPS's motion for summary judgment and dismissing Plaintiff's causes of action for malicious prosecution, false imprisonment, and any vicarious liability of Plaintiff's alleged false arrest.

2.   Negligence, Gross Negligence, and Recklessness Claims

Plaintiff pleaded a second cause of action against SCDPS for negligence, gross negligence, and recklessness. ECF No. 1-1 at 9-10. There, Plaintiff maintains that "Defendant [Enzor] breached the applicable duty of care by his unlawful arrest of Plaintiff." *Id.* SCDPS argues that Plaintiff's "vicarious liability" argument, to the extent it applies to Defendant Enzor's intentional conduct, was already addressed in section II. of its brief. ECF No. 65-1 at 18. Additionally, SCDPS maintains that by definition, gross negligence makes SCDPS immune under SCTCA. *Id.* Furthermore, SCDPS maintains that Plaintiff's cause of action for negligence

fails because he has failed to demonstrate a duty owed to him. *Id.* at 18-19. In Response, Plaintiff argues that all of his claims for negligence, gross negligence, and recklessness are "predicated on [] SCDPS's vicarious liability for the torts of its employee." ECF No. 74 at 29. Furthermore, Plaintiff argues that his negligence claims "are cognizable under South Carolina tort law and should go forward because a jury could conclude [that Defendant] Enzor's conduct was objectively unreasonable." *Id.* Plaintiff bases his negligence argument on a § 1983 cause of action. *See id.* at 29-31.

As previously held, by definition, Plaintiff's cause of action for false arrest fails as a matter of law because intent is a necessary element of the South Carolina tort. Furthermore, false arrest is the only allegation Plaintiff alleged against Defendant Enzor. Therefore, SCDPS could only be vicariously liable for Defendant Enzor's false arrest. However, this state claim fails as a matter of law, and the undersigned recommends *granting* SCDPS summary judgment on Plaintiff's negligence, gross negligence, and recklessness claims.

3.  Negligent Supervision and Negligent Training Claims

SCDPS maintains that Plaintiff's negligent supervision claim should be dismissed because Plaintiff has failed to establish each of the necessary elements of the claim. ECF No. 65-1 at 20. With regards to negligent training, SCDPS maintains that South Carolina does not recognize a cause of action for negligent training, apart from negligent supervision. *Id.* at 24-30. However, even if a negligent training cause of action did exist, SCDPS argues that Plaintiff has failed to present evidence in support of this claim. *Id.* In response, Plaintiff maintains that the record supports her causes of action for both negligent supervision and negligent training. ECF No. 74 at 31-34. Plaintiff argues that the following pieces of evidence support his allegations: (1) a portion of witness Bobby Collins's deposition, (2) a portion of Defendant Enzor's testimony,

(3) testimony of Plaintiff's expert witness, and (4) portions of Plaintiff's expert report. *Id.* at 31-34.

In South Carolina, an employer can be independently liable in tort for situations in which "an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008) (citing Restatement (Second) of Torts § 317 (1965)). "[A] plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public." *Id.* This theory rests on the employee's direct negligence. *See id.* In adopting the Second Restatement, the South Carolina Supreme Court has found that the following four-part test is used when determining whether an employer may be liable for negligent supervision if an employee intentionally harms another:

> (i) [the employee] is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or
> (ii) [the employee] is using a chattel of [the employer], and . . . .
> (i) [the employer] knows or has reason to know that he has the ability to control his [employee], and
> (ii) [the employer] knows or should know of the necessity and opportunity for exercising such control.

*Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992).

SCDPS asserts, and the undersigned agrees, that negligent training and negligent supervision are not separate torts in South Carolina. *Gainey v. Kingston Plantation*, No. 4:06-3373-RBH, 2008 WL 706916, at *7 n.4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision."). In other words, a plaintiff must use the same test, as cited above, to demonstrate a cause of action for either negligent supervision or negligent training. *See James*, 661 S.E.2d at

330 (2008) ("Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort. In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself *negligent in hiring, supervising, or training the employee*, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public.") (emphasis added). Therefore, the undersigned must determine whether a genuine issue of material fact exists to give SCDPS reason and opportunity to control Defendant Enzor.[7]

Bobby Collins, former Director of Investigations for Office of Professional Responsibilities ("OPR"), testified as a witness. ECF No. 74-10. Collins testified that OPR is the "internal affairs component for the South Carolina Department of Public Safety." *Id.* at 6. Plaintiff maintains that Collins' deposition testimony demonstrates SCDPS troopers pose a risk to black citizens due to a culture of racism. ECF No. 74 at 33. Specifically, in his deposition Collins testified that SCDPS' prior Director "mentioned [to Collins] that there was a culture there where there was disparate treatment amongst some of the officers dealing with minorities." *Id.* at 32.[8] Further, Plaintiff maintains that Defendant Enzor's testimony—that he had not been trained on how to deal with argumentative people or diffuse situations—supports Plaintiff's theory of negligence on SCDPS's part. *Id.* at 33. Plaintiff also maintains that his expert's

---

[7] SCDPS devotes much of its brief to discussing a You-Tube video that Plaintiff produced in discovery that Mrs. Newkirk maintains depicts Defendant Enzor "doing this to someone else years ago." ECF No. 65-1 at 21. Additionally, SCDPS discusses a video of a 2006 encounter of which Defendant Enzor was a part. *Id.* at 22-24. In his Response brief, Plaintiff did not reference either of these encounters and only discusses four key pieces of evidence purporting to support his causes of action. Based on Plaintiff's brief, the undersigned will not analyze the impact of the You-Tube video or the 2006 encounter herein.

[8] Though Collins' testimony is quoted in the argument section of Plaintiff's brief, the undersigned notes that this portion of Collins' testimony is not provided as an Exhibit to the court. *See* ECF No. 74-10.

testimony and report concerning the proper type and amount of training police officers should undergo supports his argument.

Plaintiff's evidence in which a witness testifies and describes SCDPS as having a racist culture is not enough to withstand summary judgment on Plaintiff's negligent supervision cause of action. The same is true for Plaintiff's purported evidence of negligent training. Here, Plaintiff's evidence, at best, alleges that "some" officers, not necessarily Defendant Enzor, demonstrated disparate treatment when dealing with minorities. Further, Defendant Enzor's testimony demonstrates that he was not specifically trained on how to deal with argumentative people so that he could "diffuse situations." Additionally, Plaintiff's evidence from his expert demonstrates what Plaintiff's expert opines is necessary police training. However, none of this evidence pertains to *Defendant Enzor's* criminal history, work history, or other possible ill behaviors or attributes.

When addressing a negligent supervision cause of action, no South Carolina court has held that evidence of general racist culture within a department is evidence that would put an employer on notice and demonstrate that the employer needs to control a specific employee. Similarly, a demonstration of a lack of a particular training opportunity has not been deemed evidence that would support a claim of negligent training. *See Gilco v. Logan Cnty. Com'n*, No. 2:11-0032, 2012 WL 3580056, at *7 (S.D.W. Va. Aug. 17, 2012) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)) ("[T]he Supreme Court has counseled that the fact that 'a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [government entity].'"). Rather, courts have examined specific evidence regarding an employee's history, behaviors, or pattern of behavior when examining causes of action for negligent supervision or negligent training. *See e.g., Doe v. Bishop of Charleston*, 754 S.E.2d

494, 500 (S.C. 2014), *reh'g denied* (Mar. 6, 2014) ("This rule has been applied to find an employer liable for negligent supervision when the employee sexually assaulted a minor and the employer had some notice of the employee's prior inappropriate sexual behavior with another minor."); *Bank of New York v. Sumter Cnty.*, 691 S.E.2d 473, 478 (S.C. 2010) (affirming summary judgment where there was no evidence that South Carolina Judicial Department knew or should have known employees posed an "undue risk of harm to the public."); *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292 (S.C. 1996) (holding life insurer could be held liable for negligent supervision of agent whom it knew had mishandled applications in past); *Hamilton v. Charleston Cnty. Sheriff's Dep't*, 731 S.E.2d 727, 730 (S.C. Ct. App. 2012) ("Although [an expert] testified the Department violated nationally accepted standards, the Department provided uncontradicted evidence that it met minimum security standards set for South Carolina. In addition, there is no evidence the Department knew or should have known of the necessity to exercise additional supervision of Officer [employee] to prevent him from harming Hamilton.")[9]; *Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. Ct. App. 2011) (holding that evidence of employee's single assault conviction was reason for employer to foresee that employing employee would create an undue risk of harm to the public in negligent hiring case); *Kase*, 707 S.E.2d at 459 (examining employee's poor driving record, insubordinate behavior, marital difficulties and resulting financial problems, and prior erratic behavior before holding that employer was not liable under negligent supervision and retention causes of action); *Doe v. ATC, Inc.*, 624 S.E.2d

---

[9] Here, unlike in *Hamilton*, Plaintiff does not allege or present any evidence that SCDPS's training violates nationally *accepted* standards or any recognized standards. *See* ECF No. 74 at 33-34. Rather, Plaintiff's expert testified that he found Defendant Enzor's training was "inconsistent with *reasonable police practices* that a police officer anywhere in the United States would receive absolutely no training on how to deal with argumentative individuals." ECF No. 74-12 at 5 (emphasis added). Additionally, Plaintiff's expert's report opines that Defendant Enzor's "*arrest* of [Plaintiff] was inconsistent with generally accepted police practices." ECF No. 74-12 at 30 (emphasis added).

447, 451 (S.C. Ct. App. 2005) (examining allegations of employee's previous misconduct of an "inappropriate advance" directed toward a co-worker in a negligent retention case and holding that a single isolated incident of prior misconduct by an employee (of which the employer knew or should have known) may support a negligent retention claim, provided the prior misconduct has a sufficient nexus to the ultimate harm); *Charleston, S.C. Registry for Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP*, 598 S.E.2d 717, 723 (S.C. Ct. App. 2004) (affirming summary dismissal of negligent supervision claim where "the elements necessary to prove negligent supervision of an employee acting outside of the scope of his employment [were] not present in the record" and specifically finding that employee's performance reviews contained in the record did not support cause of action for negligent supervision); *Moore by Moore v. Berkeley Cnty. Sch. Dist.*, 486 S.E.2d 9, 13 (S.C. Ct. App. 1997) ("Absent some evidence indicating notice to the District of [employee's] inappropriate sexual proclivities, there is no basis to conclude the District knew or should have known of the necessity for supervising her conduct outside the classroom."); *Doe by Doe v. Greenville Hosp. Sys.*, 448 S.E.2d 564 (S.C. Ct. App. 1994) (holding hospital had prior notice of inappropriate sexual behavior on part of male employee so as to be liable for negligent hiring and supervision); *see also James*, 661 S.E.2d at 331 (acknowledging that often pieces of evidence "such as a prior driving record, an arrest record, or other records of past mishaps or misbehavior by the employee" are offered to prove a negligent hiring, training, supervision, or entrustment claim).

Some evidence relating specifically to the employee—such as the employee's history, traits, and past behaviors—that could put the employer on notice that the employer has reason to control or train its employee must be present in a case concerning an employer's direct negligence. Here, no such evidence exists. Therefore, the undersigned recommends granting

SCDPS's Motion for Summary Judgment on Plaintiff's causes of action for negligent supervision and negligent training.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant Enzor's Motion for Summary Judgment, ECF No. 64, be *granted in part and denied in part*. Additionally, the undersigned recommends that SCDPS's Motion for Summary Judgment, ECF No. 65, be *granted* and that SCDPS be dismissed with prejudice from this action.

IT IS SO RECOMMENDED.

April 8, 2015                                        Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached**