IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jerome C. Newkirk, Sr., ) | Civil Action No. 2:13-1634-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| James B. Enzor, *individually and as an* ) | |
| *officer of the South Carolina Highway* ) | |
| *Patrol, and* the South Carolina Department ) | |
| of Public Safety, ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| Catherine B. Newkirk, ) | Civil Action No. 2:13-1635-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| James B. Enzor, *individually and as an* ) | |
| *officer of the South Carolina Highway* ) | |
| *Patrol, and* the South Carolina Department ) | |
| of Public Safety, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on Defendant James Enzor's motion in limine to exclude evidence (Dkt. No. 121),[1] Plaintiffs' motion in limine to strike undisclosed witnesses (Dkt. No. 123), Plaintiffs' motion in limine to exclude expert testimony (Dkt. No. 124), Defendant South Carolina Department of Public Safety's ("SCDPS") motion in limine to exclude evidence (Dkt. No. 125), and Plaintiffs' motion to strike SCDPS's motion in limine to exclude evidence (Dkt. No. 137). For the reasons set forth below, the Court grants in part and denies in part Mr. Enzor's

---

[1] Citations are to Case No. 2:13-1634-RMG. That case and 2:13-1635-RMG have been consolidated for trial. (Dkt. No. 115.)

motion in limine (Dkt. No. 121), grants Plaintiff's motion in limine (Dkt. No. 123), grants in part and denies in part Plaintiffs' motion to exclude expert testimony (Dkt. No. 124), denies SCDPS's motion in limine to exclude evidence (Dkt. No. 125), and denies as moot Plaintiffs' motion to strike SCDPS's motion in limine (Dkt. No. 137).

## I. Background

This lawsuit arises from a traffic stop on Interstate 95 ("I-95") and an arrest following the stop. (Dkt. No. 1.) On October 14, 2012, Mr. Enzor, then a Lance Corporal with the South Carolina Highway Patrol, stopped a car driven by Plaintiff Catherine Newkirk for speeding in Florence County, South Carolina.[2] Her husband, Plaintiff Jerome Newkirk, was a passenger. Mr. Enzor told Mrs. Newkirk (the driver) that she had been traveling at 77 miles per hour in a construction work zone where the posted speed limit was 55 miles per hour. After reviewing Mrs. Newkirk's registration and proof of insurance, Mr. Enzor decided to issue a citation for 64 in a 55. Mrs. Newkirk, however, insisted that she had not been speeding, stating, "I think there is a bit of discrimination going on here." Mr. Enzor then ordered her to exit the car and she did so, going to the rear of the car with Mr. Enzor.

Mr. Enzor and Mrs. Newkirk then engaged in a somewhat inaudible discussion, during which Mr. Enzor pointed at Mrs. Newkirk and said, "Let me tell you something right now," and Mrs. Newkirk responded, "No." Mr. Enzor then arrested Mrs. Newkirk. He took her wrist and attempted to pull her arms toward him, then stepped behind her and pressed her against the car,

---

[2] This factual recitation, which is for background purposes only and does not constitute judicial findings of fact, is based on video from the dashboard camera in Mr. Enzor's patrol car and on audio from a microphone he wore; from the Fourth Circuit's factual recitation in its opinion affirming the denial of Mr. Enzor's qualified immunity claim, which is based on the same video and audio sources, *Newkirk v. Enzor*, No. 15-1795, 2017 WL 56718 (4th Cir. Jan. 5, 2017); and on the Reports and Recommendations of the Magistrate Judge on Defendants' motions for summary judgment.

twisting her hands and wrists to pull her hands behind her back. He instructed Mrs. Newkirk to "quit resisting arrest," and she responded, "I'm not resisting arrest." He then called for backup.

Struggling to handcuff Mrs. Newkirk (a woman of fifty years of age), Mr. Enzor repeatedly yelled at Mrs. Newkirk, "Get in the car," referring to his patrol car. Mrs. Newkirk protested, "You're hurting me," and called out to her husband. Mr. Newkirk exited the car and walked to Mr. Enzor, allegedly telling him that his actions were unnecessary (his statements are inaudible). Still struggling to handcuff Mrs. Newkirk, Mr. Enzor pointed at Mr. Newkirk, and instructed him to "get in the car, sir, get in the car." Mr. Newkirk walked back to the car, and once inside, left the door slightly ajar, keeping his head turned toward Mr. Enzor and Mrs. Newkirk. While Mr. Enzor continued to struggle with Mrs. Newkirk, Mr. Newkirk shouted "ain't no reason for that" and other inaudible statements to Mr. Enzor. Mr. Enzor then told Mr. Newkirk that he too was under arrest. Once Mrs. Newkirk was in the custody of an officer who responded to Mr. Enzor's request for backup, Mr. Enzor arrested Mr. Newkirk.

The Newkirks each filed suit against Mr. Enzor and SCDPS. Mr. Newkirk alleged (1) false arrest in violation of his constitutional rights under 42 U.S.C. § 1983, against Mr. Enzor; (2) negligence, gross negligence, or recklessness against SCDPS; (3) outrage against SCDPS; (4) malicious prosecution against SCDPS; (5) false imprisonment against SCDPS; and (6) negligent supervision against SCDPS. Mrs. Newkirk alleged (1) false arrest and excessive force in violation of her constitutional rights under 42 U.S.C. § 1983, against Mr. Enzor; (2) assault against SCDPS; (3) battery against SCDPS; (4) negligence, gross negligence, or recklessness against SCDPS; (5) outrage against SCDPS; (6) malicious prosecution against SCDPS; (7) false imprisonment against SCDPS; and (8) negligent supervision against SCDPS. (Dkt. No. 1-1; (Dkt. No. 1-1 in 2:13-1635-RMG).) Claims for outrage and negligent supervision were abandoned, and the Court granted

summary judgment for Defendants on Mrs. Newkirk's claims for false arrest, malicious prosecution, and false imprisonment. (Dkt. No. 90; (Dkt. No. 89 in 2:13-1635-RMG).)

After the Court ruled on Defendants' motions for summary judgment, Mr. Enzor filed an interlocutory appeal of the Court's denial of his claim of qualified immunity, which took over 18 months to resolve. (Dkt. Nos. 93 (notice of appeal July 16, 2015), 106 (mandate January 27, 2017).) When the Fourth Circuit finally issued its mandate affirming the denial of qualified immunity, this Court promptly scheduled the case for trial. (Dkt. No. 113 (February 13, 2017 notice of jury trial to begin March 13, 2017).) Both parties have now filed numerous motions in limine seeking to exclude various evidence.

## II.   Legal Standard

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, Crim. No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."). A district court therefore has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). Nonetheless, a motion in limine "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3.

### III.    Discussion

**A.    Mr. Enzor's motion to exclude facts and circumstances surrounding the termination of his employment with SCDPS**

SCDPS investigated the arrest of the Newkirks, and concluded that Mr. Enzor arrested Mrs. Newkirk lawfully, that he arrested Mr. Newkirk unlawfully, and that he was discourteous and behaved in a manner unbecoming an officer. (Dkt. No. 65-2 at 27.) As a result, Mr. Enzor was demoted and suspended for ten days. (Dkt. No. 134 at 2.) Mr. Enzor's demotion was withdrawn after he filed an administrative grievance. (*Id.* at 3.) Thereafter, Mr. Enzor was fired for making a derogatory comment about a superior officer. (*Id.*) In response to his termination, Mr. Enzor has sued SCDPS, alleging he was fired in racial retaliation for the incident with the Newkirks and not because of a later derogatory comment about a superior officer. (*Id.* 3–4.) Mr. Enzor moves to exclude "[t]he facts and circumstances surrounding the separation of employment between [himself] and [SCDPS]." (Dkt. No. 114 at 1.)

The controlling standard for an excessive force claim under the Fourth Amendment is whether the force employed was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). The Court agrees that SCDPS's personnel management decisions are not relevant to this case, because SCDPS's standards of courtesy and its standards for trooper discipline are not the legal standards applicable to Plaintiffs' claims. *See* 3 Martin A. Schwartz, Section 1983 Litigation – Federal Evidence § 1.04[C][15] (5th ed. 2013) ("[T]he circuit courts have consistently rejected attempts by plaintiffs to demonstrate that the defendant officer failed to follow police department guidelines or proper procedure."). Thus, evidence about how SCDPS disciplined Mr. Enzor in response to the findings of its investigation of the arrest of the Newkirks cannot make any fact material to Plaintiffs' claims more or less probable, nor will evidence about a later instance of alleged insubordination. *See* Fed. R. Evid. 401. The Court grants Mr. Enzor's motion insofar

as "facts and circumstances surrounding" his termination means evidence about personnel actions concerning Mr. Enzor.

The motion is denied to the extent "facts and circumstances surrounding" Mr. Enzor's termination is meant to encompass SCDPS's investigation of the incident at issue in this litigation. As a general matter, official reports of a public office of matters observed while under a legal duty to report, or factual findings of government investigations, are admissible in civil trials. Fed. R. Evid. 803(8). Although SCDPS was, presumably, investigating compliance with its own polices rather than the Fourth Amendment, a police department does not make otherwise admissible evidence inadmissible by investigating an incident as a possible violation of internal policies.

## B. Plaintiffs' motion to strike four witnesses from SCDPS's witness list

Plaintiffs move to strike four witnesses, Captain Joyce Brunson, Sergeant Wesley Ingram, Officer Tracie Singletary, and Officer Mark Jennings, from SCDPS's witness list because they were not disclosed by name in response to Plaintiffs' interrogatories. Instead, SCDPS identified only "[s]taff and officers of the Florence County Detention Center . . . who had contact with [Plaintiffs] on or after October 14, 2012. These witnesses will be identified with greater particularity as discovery progresses." (Dkt. No. 115.) Plaintiffs argue these witnesses should have been identified by name by the close of discovery on November 14, 2014; instead, they were identified in pretrial disclosures on February 7, 2017.

In deciding whether nondisclosure is substantially justified or harmless, the Court considers (1) the surprise to the party against whom the evidence would be offered, (2) ability to cure the surprise, (3) the extent to which allowing the evidence would disrupt trial, (4) the importance of the evidence, and (5) the nondisclosing party's explanation for failing to make a timely disclosure. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). The Court finds that this late disclosure is a substantial surprise. While it is true, as

SCDPS argues, that Plaintiffs had learned the names of officers at the detention center during discovery, they did not know which of those officers SCDPS intended to call as witnesses or the substance of their expected testimony. The Court sees no potential cure for the surprise other than to delay trial, which would be a substantial disruption in a case that was filed nearly four years ago. Moreover, testimony from Florence County Detention Center officers is not of crucial importance in a case in which the critical events occurred on I-95. Finally, SCDPS offers no explanation whatsoever for its failure to disclose. Instead, SCDPS argues that it did timely disclose these witnesses because it identified "staff and officers" of the Florence County Detention Center who had contact with the Newkirk's and Plaintiffs knew, by the end of discovery, the identities of all such officers. That is true but irrelevant: Captain Brunson, Sergeant Ingram, Sergeant Gaymon, Officer Singletary, Officer Jennings, Officer Perkins, Officer Barron, and Officer Mason all appear to fit SCDPS's disclosure. (Dkt. No. 131-5 at 2.) Not until February 7, 2017 did SCDPS identify as witnesses four particular persons.

The Court therefore grants Plaintiffs' motion to strike four witnesses from SCDPS's witness list.

## C.    Plaintiffs' motion to exclude expert testimony from Brian S. Batterton

Plaintiff moves to exclude certain of Brian S. Batterton's expert opinions under Rules 104, 403, and 702 of the Federal Rules of Evidence. Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (*Daubert* applies to all expert testimony). Rule 403 of the Federal Rules of Evidence permits exclusion of relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion, or delay. Fed. R. Evid. 403.

Brian Batterton is an attorney and a captain in the Cobb County, Georgia police department. (Dkt. No. 133-1 ¶¶ 1–5.) Mr. Enzor has identified him an expert and has produced his expert report. Plaintiffs object to paragraphs 22–28 of the report, arguing those paragraphs offer ultimate legal conclusions, speculate about Mr. Enzor's motives and intentions, or reach conclusions on disputed facts. (Dkt. No. 117 at 2–3.) Expert testimony on issues of law is inadmissible and experts may not offer ultimate legal conclusions on a plaintiff's claims. *In re Safety-Kleen Corp. Rollins Shareholders Litig.*, No. 3:00-1343-17, 2004 WL 5504972, at *1 (D.S.C. Aug. 30, 2004). "Testimony about intent or motive lies outside the bounds of expert testimony." *SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 643 (E.D.N.C. 2013); *see also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000) ("The question of intent is a classic jury question and not one for experts . . . ."). Rule 704 of the Federal Rules of Evidences explicitly permits expert opinions regarding disputed facts, but it is not an expert's role to offer opinions about the credibility of witnesses. *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995). Further, "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).

Applying the above legal standards, the Court examines the challenged paragraphs of Captain Batterton's report below, *seriatim*, and for the reasons set forth grants Plaintiffs' motion as to paragraphs 22, 24, 25, 26, 27, and 28 and denies Plaintiffs' motion as to paragraph 23.

**Paragraph 22**. This paragraph merely states that, in Captain Batterton's opinion, if Mr. Enzor's testimony is credited he "had probable cause to believe that Mrs. Newkirk was speeding" and so had probable cause to effect a traffic stop. A law enforcement officer's authority to effect

a traffic stop when he observes a speeding vehicle is not disputed: the dispute is whether Mrs. Newkirk was speeding. She says she was not, Mr. Enzor says she was. The only purpose of this paragraph is to bolster Mr. Enzor's credibility as a witness by having Captain Batterton state "based on my background, training, experience as a police officer, experience as a detective, experience as a police supervisor, experience as a police commander, education, and continued research, writing, and training" before stating that Mr. Enzor had probable cause to stop Mrs. Newkirk if his testimony is credited. Court therefore excludes it as an improper expert opinion regarding the credibility of a witness.

**Paragraph 23**. Captain Batterton explains that it is standard procedure to separate an argumentative vehicle occupant from other vehicle occupants by asking the argumentative person to step out of the vehicle and to come to the rear of the vehicle, in view of the officer's dashboard camera. Plaintiffs' argue this is improper speculation about Mr. Enzor's motives when he asked Mrs. Newkirk to exit her vehicle. The Court disagrees. This is a proper expert opinion about traffic stop procedures, which might assist the jury in understanding the traffic stop at issue in this case by providing background information that is not commonly known to lay persons.

**Paragraph 24**. Captain Batterton states that in his opinion, an officer in Mr. Enzor's position reasonably could have believed that Mrs. Newkirk was refusing to accept the speeding citation when she responded to Mr. Enzor's statement "Let me tell you something" with "No" and then turned as if she were walking back to the door of her vehicle. Captain Batterton then goes on to explain that under S.C. Code § 56-25-30, an officer must arrest a person cited for speeding if the person refuses to accept the citation. The Court will not permit an attorney witness to testify about the law. Further, the jury does not need Captain Batterton's assistance to determine whether Mrs. Newkirk's words and actions indicate that she was refusing to accept the citation. To the

extent the testimony of Mrs. Newkirk and Mr. Enzor diverge on this question, Captain Batterton's opinion serves merely to bolster Mr. Enzor's credibility. The Court therefore excludes this paragraph.

**Paragraph 25.** Captain Batterton states that in his opinion Mr. Enzor had probable cause to arrest Mrs. Newkirk under S.C. Code § 16-9-320(A) (resisting arrest). He block quotes the statute and then applies that law to the facts of this case. This is an impermissible expert legal conclusion on Plaintiffs' claims. The Court therefore excludes this paragraph.

**Paragraph 26.** Captain Batterton provides the Fourth Amendment standard for excessive force, citing *Graham v. Connor*, and then applies that law to the facts of this case to conclude that Mr. Enzor did not use excessive force. Additionally, Captain Batterton quotes a the definition of "active resistance" from a U.S. Department of Justice-funded study about Taser use[3] to conclude that Mrs. Newkirk was actively resisting arrest and that Mr. Enzor's response, "soft, empty hand control tactics (no strikes or intermediate weapons used)" was in accordance with generally accepted law enforcement practice. That study, meant for a national audience, provided a glossary of terms to minimize confusion created because "[p]olice agencies also used varied definitions for similar behaviors that subjects exhibited." Cronin et al., *supra*, at 15. Whether Mrs. Newkirk's behavior fell within the definition of "active resistance" that the authors of that publication elected to use to clarify an interagency communication has no relevance to this case. In this case, South Carolina law defines resisting arrest. *See* S.C. Code § 16-9-320(A). What constitutes resistance is a question of law. *See, e.g., South Carolina v. Brannon*, 697 S.E.2d 593, 596 (S.C. 2010); *South*

---

[3] James M. Cronin & Joshua A. Ederheimer, Conducted Energy Devices: Development of Standards for Consistency and Guidance (2006), *available at* https://www.bja.gov/Publications/ced_standards.pdf.

*Carolina v. Williams*, 624 S.E.2d 443, 446 (S.C. Ct. App. 2005). This paragraph is impermissible expert legal conclusion on Plaintiffs' claims, and the Court therefore excludes it.

**Paragraph 27.** Captain Batterton opines that Mr. Anzor acted in accordance with accepted police procedure when she purportedly refused to enter Mr. Enzor's patrol car. In support of that opinion, he provides a narration of events recorded on Mr. Enzor's patrol car, adding editorial comments (e.g., Mrs. Newkirk "continued to be unruly") without adding any discernible expertise. He does not even state the accepted police procedure for placing a limp, middle-aged woman into a patrol with which Mr. Enzor purportedly complied. In this paragraph, Captain Batterton merely constructs a factual narrative based upon record evidence—a narrative bolstered by his expert status. The Court therefore excludes this paragraph.

**Paragraph 28.** Once again, Captain Batterton, an attorney, cites and quotes South Carolina statutes and applies the law to the facts of the case to reach ultimate legal conclusions regarding Plaintiffs' claims. This paragraph concerns the arrest of Mr. Newkirk under S.C. Code § 16-5-50, which the SCDPS investigation of this incident determined to be unlawful. (Dkt. No. 65-2 at 26.) Captain Batterton acknowledges SCDPS's conclusion that probable cause for an arrest did not exist under that statute, but he opines that a reasonable officer could have thought probable cause did exist because Mr. Enzor, another South Carolina Highway Patrol Trooper, and a South Carolina Magistrate all initially thought so. That is argument, not an admissible expert opinion. Captain Batterton then continues to proffer an alternative legal theory of probable cause for the arrest of Mr. Newkirk, based on S.C. Code § 16-9-320(A). The Court excludes this paragraph as improper legal conclusions by an expert witness.

### D. SCDPS's motion to exclude evidence regarding monetary damages or medical damages

SCDPS moves to exclude evidence of monetary damages and medical damages, other than medical costs of Mrs. Newkirk's treatment under Dr. Constance Olantadayne.[4] (Dkt. No. 125). SCDPS asserts Plaintiffs failed to provide a computation of each category of damages claimed as required under Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. (*Id.*) In response, Plaintiffs represent that they will not present any evidence on medical damages other than costs of treatment under Dr. Olantadayne. (Dkt. No. 135 at 2.) Plaintiffs also represent they will not present any evidence on calculable economic damages. (*Id.*) Damages for pain and suffering or for indignity and punitive damages are not party-calculable damages subject to Rule 26(a)(1)(A)(iii). *See Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-CV-01300-JMC, 2016 WL 3452734, at *2 n.1 (D.S.C. June 24, 2016); *see also Williams v. Trader Pub. Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)."); *EEOC v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011) ("The Court denies the Defendant's

---

[4] SCDPS's motion states, "[SCDPS] hereby moves *in limine* to . . . (2) prohibit the Plaintiffs from offering any documents or testimony regarding medical damages with the sole exception of such prescriptions, treatments, or the diagnosis made as to Catherine Newkirk by Constance Olatadayne, M.D." (Dkt. No. 125 at 1.) SCDPS's motion has a point heading stating, "II. The only medical evidence produced during discovery as to damages comes from Contance [*sic*] Olatadayne, M.D. and any other evidence of medical damages should be excluded from trial." (Id. at 8.) SCDPS goes on to state, "Defendant SCDPS, therefore, respectfully requests that the Court grant its Motion *in Limine* and, thereby, preclude the Plaintiffs from offering any evidence of medical damages unless those damages relate specifically to Dr. Olatadayne's diagnosis and/or treatment of Catherine Newkirk." (*Id.*) But after Plaintiffs' response conceded SCDPS's motion regarding medical damages, SCDPS attempted to move the goal posts, stating in their reply to Plaintiffs' concession, "While Defendant admits that Dr. Olantadayne was provided as a witness during discovery, Defendant does not concede that she should be able to present evidence as to damages." (Dkt. No. 140.) To the contrary, the Court deems SCDPS has conceded exactly that.

motion to compel a computation of Plaintiff's emotional distress and punitive damages on the basis that they are issues for the factfinder."). The Court therefore denies SCDPS's motion to exclude evidence regarding damages. Plaintiffs' motion to strike SCDPS's motion to exclude evidence regarding damages is denied as moot.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** in part Mr. Enzor's motion in limine to exclude evidence relating to his termination from SCDPS (Dkt. No. 121), **GRANTS** Plaintiff's motion in limine to exclude undisclosed witnesses (Dkt. No. 123), **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion to exclude expert testimony (Dkt. No. 124), **DENIES** SCDPS's motion in limine to exclude evidence related to damages (Dkt. No. 125), and **DENIES AS MOOT** Plaintiffs' motion to strike SCDPS's motion in limine (Dkt. No. 137).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March 2, 2017
Charleston, South Carolina